ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
ROBERT W. SPENCER (SBN 238491)
rspencer@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

ARTHUR H. BRYANT (SBN 208365)
arthur@arthurbryantlaw.com
**ARTHUR BRYANT LAW, P.C.**
1999 Harrison Street, 18th Floor
Oakland, California 94612
Telephone: (510) 391-5454

*Attorneys for Plaintiffs and the proposed class*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

ANNA DONOVAN, AVERY ADAMSON, SOPHIA BLAKE, ADDYSON BROWN, MYA CLADER, SABINE CLOSE, KATYA DUNDAS, CHLOE FARES, MARGARET FRANKE, CARMEN GONZALEZ, LILIANA GROSZ, LAURA HOLLIDAY, HANNAH JANICKI, NICOLE JIMENEZ, NICOLE SHROYER, CAVAN SMITH, ZADIE STACK, LOLA SULLIVAN, MYLEA TRIMBLE, individually and on behalf of a class of similarly situated individuals,

Plaintiffs,

v.

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, ON BEHALF OF ITS DAVIS CAMPUS,

Defendant.

**CLASS ACTION**

Case No:

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## INTRODUCTION

1. This is a sex discrimination class action against the Regents of the University of California, on behalf of its Davis campus ("UC Davis" or "Defendant") for violating Title IX of the Education Amendments of 1972 ("Title IX") by depriving UC Davis's female varsity student-athletes of equal athletic financial aid.

2. UC Davis has not paid its female varsity student-athletes equal athletic financial aid since at least the 2017-2018 academic year. This is confirmed by the Equity in Athletics Disclosure Act ("EADA") data that UC Davis has provided to and verified with the U.S. Department of Education for many years. According to the EADA data, UC Davis failed to pay its female varsity student-athletes between $141,474 and $577,560 annually in athletic financial aid for academic years 2017-18 through 2024-25.[1] Due to UC Davis overpaying athletic financial aid to male student-athletes instead, the estimated monetary damages are even higher, ranging between $294,306 and $1,168,941 annually for the academic years 2017-18 through 2024-25.[2]

3. On January 9, 2026, UC Davis publicly released a comprehensive review of its intercollegiate athletics program by Collegiate Consulting, a third-party consulting group, in support of its decision to downgrade its varsity women's equestrian team from Division I to club sport in 2026-27. UC Davis also announced that it plans to upgrade the women's stunt team from club sport status to varsity in July 2026.

4. According to the Collegiate Consulting Report, UC Davis failed to pay its female varsity student-athletes $302,536 in equal athletic financial aid in the 2025-26 academic year and is projected to deprive its female varsity student-athletes of $532,103 in equal athletic financial aid for the 2026-27 academic year. Due to UC Davis overpaying athletic financial aid to its male student-athletes instead, the estimated monetary damages based on the Collegiate Consultant Report are even higher, $729,189 for the 2025-26 academic year and a projected $1,379,958 for the 2026-27 academic year. This is explained in detail below in paragraphs 236-250 below.

---

[1] See Exhibit A, attached hereto, column titled "Female Financial Aid Gap as $ Amt."

[2] *Id.* at column titled "Female Financial Aid Damages."

5. This lawsuit seeks to make UC Davis pay damages to its female varsity student-athletes for depriving them of equal athletic financial aid, including the opportunity to compete for aid on an equal basis with men, and to require UC Davis to provide its female varsity student-athletes with equal athletic financial aid, including the opportunity to compete for aid on an equal footing with men, in the future.

**JURISDICTION AND VENUE**

6. This action arises under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*, and the regulations and policies promulgated pursuant to that law.

7. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

8. Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202 to obtain the correct interpretation of the legal requirements described in this Complaint, which is necessary and appropriate to determine the parties' respective rights and duties.

9. Venue is proper in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because UC Davis is located in Davis, California, which is within this Court's jurisdiction. In addition, the events giving rise to the Complaint occurred in Davis, California, within this Court's jurisdiction.

**THE PARTIES**

***Plaintiffs***

10. Plaintiffs were members of the NCAA Division I women's varsity equestrian team and female varsity student-athletes at UC Davis.

11. On January 9, 2026, UC David announced that it was eliminating its NCAA Division I women's varsity equestrian team and transitioning it to a campus club sport.

12. When it did so, UC Davis announced that "[a]ll current athletics-related financial aid for Equestrian student-athletes will be honored and maintained throughout their undergraduate degree completion at UC Davis. Student-athletes will continue to receive academic, medical aid related support services during the varsity sponsorship period."

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

13. During all times relevant to this case, varsity student-athletes at UC Davis received, could have received, or may receive large amounts of athletic financial aid, including, but not limited to, scholarships, grants-in-aid, tuition, required fees, room, board, books, costs of attendance, other education related expenses, summer school financial aid, loss of value insurance, name image and likeness payments with which the school is involved, revenue sharing payments with which the school is involved, summer training expenses when they are not enrolled in summer school classes, and NCAA Special Assistance and Student Opportunity Fund grants.

14. UC Davis's average cost of attendance for California residents was $14,645.24 for the 2021-22 academic year, $15,257.61 for the 2022-23 academic year, $15,999.37 for the 2023-24 academic year, and $16,773.85 for the 2024-25 academic year. [3] Information is not yet available for the 2025-26 academic year.[4]

15. UC Davis's average cost of attendance for non-California residents was $44,399.24 for the 2021-22 academic year, $46,283.61 for the 2022-23 academic year, $48,573.73 for the 2023-24 academic year, and $50,973.85 for the 2024-25 academic year.[5] Data is not yet available for the 2025-26 academic year.

16. UC Davis is a member of the NCAA and it participates in NCAA Division I athletics, the highest level of intercollegiate competition. UC Davis's varsity women's equestrian team competed in the conference Eastern College Athletic Conference ("ECAC"). The collegiate equestrian conferences compete as part of the National Collegiate Equestrian Association ("NCEA"), which is the governing body and conducts the national championship in the sport.[6]

---

[3] *See* UC Davis historical tuition data available at https://financeandbusiness.ucdavis.edu/student-resources/tuition-fees/historical. Beginning with the 2022-2023 academic year, the data regarding average cost of attendance is broken down into subcategories for new and continuing students. The data listed here is for new students.

[4] *Id.*

[5] *Id.* Beginning with the 2022-2023 academic year, the data regarding average cost of attendance is broken down into subcategories for new and continuing students. The data listed here is for new students.

[6] In 1998, Equestrian was identified and adopted by the NCAA as an emerging sport for women at the Division I and II levels. The NCEA, a non-profit corporation, was created as a governing body to advance the sport. The NCEA is responsible for the development and administration of equestrian rules and

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

17. For the past several decades, UC Davis has sponsored women's and men's varsity NCAA Division I intercollegiate athletic teams, segregated based on sex.

18. Each of the Plaintiffs and all of the female varsity student-athletes at UC Davis have participated on women's NCAA Division I intercollegiate athletic teams.

19. NCAA rules place maximums, but not minimums, on the athletic financial aid UC Davis can award to student-athletes on its men's and women's teams.

20. NCAA rules do not and cannot authorize UC Davis to violate Title IX.

21. UC Davis could comply with Title IX and NCAA athletic financial aid limitations. UC Davis has chosen, however, both to deprive its female student-athletes of equal athletic financial aid in violation of Title IX and to deprive them of athletic financial aid allowed by the NCAA.

22. Each Plaintiff was entitled, under Title IX, to an opportunity to compete for athletic financial aid on an equal basis with male student-athletes.

23. UC Davis denied each Plaintiff that opportunity.

24. UC Davis deprived its female student-athletes, including Plaintiffs, of equal opportunities to receive athletic financial aid and provided its female student-athletes with proportionally far less athletic financial aid than its male student-athletes.

25. None of the Plaintiffs received all of the athletic financial aid for which she was eligible at UC Davis.

26. If UC Davis complied with Title IX and granted athletic financial aid to its female and male varsity student-athletes proportional to their athletic participation rates, its female student-athletes, including each of the Plaintiffs, would have had an opportunity to receive their fair share of equal athletic financial aid.

27. Instead, each of the Plaintiffs was denied the opportunity to receive equal financial aid, despite Title IX's express protection of that opportunity. *See, e.g.*, 34 C.F.R. § 106.37(c)

---

guidelines. Equestrian is subject to all NCAA Policies and procedures in the same manner as other sports. *See* the NCEA webpage "Mission and History", available at: https://collegiateequestrian.com/sports/2019/4/3/_131987884238679712.aspx, accessed on June 8, 2026.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

(providing that, when a school offers athletic financial awards, it "must provide reasonable opportunities for such awards for members of each sex in proportion to the number of students of each sex participating in interscholastic or intercollegiate athletics" (emphasis added)).

28. Similarly, each of the Plaintiffs was forced to confront a sex-based barrier to receiving athletic financial aid that male student-athletes did not confront and that made it more difficult for female student-athletes to receive athletic financial aid than it was for their male counterparts.

29. Put simply, compared to the male student-athletes at UC Davis, each of the Plaintiffs was forced to compete for athletic financial aid on an unequal basis because of her sex.

30. In addition to being deprived of the equal opportunity to receive athletic financial aid, each of the Plaintiffs was actually denied her fair share of equal athletic financial aid.

31. If UC Davis complied with Title IX and granted athletic financial aid to its female varsity student-athletes proportional to the athletic financial aid it granted to UC Davis's male varsity student-athletes, each of the Plaintiffs would have received at least $1 more in athletic financial aid than she did.

32. Instead, as set forth below, each of the Plaintiffs received less in athletic financial aid than she would have received if UC Davis had awarded that aid in compliance with Title IX.

33. If UC Davis complied with Title IX and granted athletic financial aid to its female varsity student-athletes proportional to the athletic financial aid it granted to UC Davis's male varsity student-athletes, each of the Plaintiffs would have been free of second-class treatment in the allocation of athletic financial aid at UC Davis.

34. Instead, each of the Plaintiffs was forced to endure an environment in which her school actively discriminated against her because of her sex.

35. This unequal financial aid treatment is inherently degrading and stigmatizing, and each of the Plaintiffs experienced the harms and injuries caused by UC Davis's intentional decision to treat female student-athletes like second-class citizens.

36. Each of the Plaintiffs also was injured because she was subjected by UC Davis to discrimination on the basis of her sex.

37. Each of the Plaintiffs was treated like a second-class citizen at UC Davis because of her sex, which is inherently degrading, stigmatizing, and affected each of the Plaintiff's experiences.

Plaintiff Anna Donovan

38. Plaintiff Anna Donovan is an out-of-state student and currently is entering her senior year at UC Davis and is majoring in psychology. She is on-track to graduate early in June 2027.

39. Plaintiff Donovan was a member of the UC Davis varsity women's equestrian team for the 2024-25 and 2025-26 seasons.

40. Plaintiff Donovan competed in equestrian since approximately age six in Connecticut.

41. Plaintiff Donovan has competed in numerous national championship competitions since eighth grade. While in high school, Plaintiff Donovan competed in eight different national championship competitions. Plaintiff Donovan chose UC Davis because of its Division I equestrian team combined with its focus on academics. The equestrian team was the main reason that she was willing to make the huge leap of going to college so far away from her family in Connecticut.

42. Plaintiff Donovan and her UC Davis women's equestrian teammates recently won the 2026 ECAC Championship title. During her time at UC Davis, the team also defeated Texas Christian University (TCU) for the first time in program history, ranked 7th nationally for the first time in program history, and ranked number one seed going into their conference championships. Plaintiff Donovan also placed on the ECAC all-conference fences[7] team during her freshman and

[7] Equestrian has two different disciplines, the English discipline and the Western discipline. The English discipline has two different events, fences and flats. The fences event shows a rider's ability to complete a smooth clean round over a sequence of eight to nine jumps. The flats event shows a rider's ability to ride the horse through a sequence of maneuvers in an enclosed space. For the Western discipline, there are two different events: horsemanship and reining. The horsemanship event shows a rider's ability to ride a horse through various maneuvers; it emphasizes control and precision. The reining event shows a rider's ability to complete very specific maneuvers such as high-speed precision, upward and downward speed transitions, and sliding stops.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

sophomore years and was named ECAC fences freshman of the year. During her sophomore year, she was on the ECAC all-conference team for flats. She also received multiple Most Outstanding Performer ("MOP") awards and was ECAC rider of the week and month multiple times during both her freshman and sophomore years.

43. Plaintiff Donovan has received only 12% of her out-of-state tuition in athletic financial aid money.

44. Plaintiff Donovan expects that she will continue to receive athletic financial aid this coming year as an undergraduate at UC Davis.

45. When UC Davis first announced that it was eliminating the women's varsity equestrian team, Plaintiff Donovan considered transferring in order to continue her Division I competitive career. But UC Davis informed her of its decision to eliminate the women's varsity equestrian team too late in the academic year for her to do so. Plaintiff Donovan inquired about transferring to other schools and was told by them that there were no longer any roster spots available or the school did not have her major. She intends to continue her undergraduate education at UC Davis.

46. For Plaintiff Donovon, losing her Division I equestrian team means losing her second family, far from Greenwhich, Connecticut, where she grew up. Professionally, she also is losing significant ties for her future plans of becoming a sports psychologist.

47. Plaintiff Donovan has been devastated by UC Davis's elimination of the women's equestrian team and felt blindsided by the decision, given how well she and her teammates work together and support each other. The reasons that UC Davis cited for downgrading the team rang untrue to Plaintiff Donovan.

<u>Plaintiff Avery Adamson</u>

48. Plaintiff Avery Adamson is an out-of-state student currently entering her senior year at UC Davis and is majoring in psychology.

49. Plaintiff Adamson was a member of the UC Davis varsity women's equestrian team for the 2024-25 and 2025-26 seasons.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

50. Plaintiff Adamson competed as an equestrian throughout high school in Oklahoma. Her grandfathers on both sides shared their love of horses, riding with her when she was very young. She started showing ponies and then moved into competitive equestrian riding in high school. In her high school years, Plaintiff Adamson was dedicated to training and competing and was highly motivated to be able to compete on a college team. She spent countless weekends and weekdays and summers training and competing at equestrian camps, missing important events with friends and family in order to spend as much time as possible in the equestrian ring.

51. During her pre-college years, Plaintiff Adamson won awards and was recognized in equestrian events, including American Quarter Horse Youth Association ("AQHYA") Champion (L1 Ranch Riding), AQHYA World Show Bronze Champion (L2 Ranch Riding), AQHYA World Show Finalist (L3 Ranch Riding), AQHYA World Show Top 20 (L2 Reining), Interscholastic Equestrian Association ("IEA") National Finals 5th place (Open Reining), IEA - Zone 7 and Regional Champion (Reining).

52. Plaintiff Adamson chose UC Davis because it provided her with the opportunity to compete as a varsity student-athlete and its academic programs fit with her goals. She also was drawn to the reputation of the UC Davis equestrian student-athletes as being friendly and supportive teammates.

53. The UC Davis women's equestrian team, including Plaintiff Adamson, recently won the 2026 ECAC Championship title. While at UC Davis, Plaintiff Adamson has been awarded Conference Rider of the Week vs. Oklahoma State, UC Davis Freshman Reiner of the Year, Most Outstanding Performance ("MOP") award Reining vs. University of Tennessee at Martin ("UTM"), two-year starter for Aggies multiple 70-plus point rides, and Conference Rider of the Week vs UTM. She also won the 2025-26 Iron Aggie award for most improved in the weight room for her team, and the 2025-26 most improved award for reining on her team.

54. When UC Davis announced on January 9, 2026, that it was downgrading the women's equestrian team from a Division I varsity team to a club sport in 2026-27, Plaintiff Adamson considered transferring to another university so that she could continue competing at the Division I level. She reached out to several universities but, given the late timing of UC Davis's

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

announcement, almost all either notified her that their rosters already were full or did not respond. Plaintiff Adamson will be unable to compete as a varsity equestrian student-athlete for the remainder of her college years.

55. Plaintiff Adamson has received athletic financial aid from UC Davis in amounts that equaled 15% of UC Davis's in-state tuition, even though she paid and pays out-of-state tuition. In 2024-25, Plaintiff Adamson received $1,189 for the fall quarter, $1,172 for the winter quarter and $1,172 for the spring quarter. She received $1,261 for each quarter of the 2025-26 academic year.

56. Plaintiff Adamson expects that she will continue to receive athletic financial aid for the remainder of her undergraduate education at UC Davis.

57. When she was recruited at UC Davis, Plaintiff Adamson was told by the former equestrian coach that starting student-athletes receive an increase in athletic financial aid money. Even after she became a starting athlete, Plaintiff Adamson did not receive an increase. When she recently inquired about the increase, her current coach Kendal Scheiner told her that UC Davis would not give any additional scholarship money to female student-athletes on the equestrian team.

58. Without the varsity equestrian team, Plaintiff Adamson is taking summer classes and filling up her semester courseload to graduate early because UC Davis's out-of-state tuition costs so much and she is receiving only partial athletic financial aid.

59. Plaintiff Adamson has been harmed by UC Davis's decision to eliminate the Division I women's varsity equestrian team. Losing the ability to continue competing as a Division I student-athlete means that Plaintiff Adamson's varsity time riding horses is coming to a close.

60. Professionally, Plaintiff Adamson is worried that no longer being a varsity student-athlete will negatively affect her applications to graduate school. She also had to sacrifice certain work and academic activities while at UC Davis because of the four-plus hours per day she spent doing team-required activities. She believes that, now, she is behind on her professional resumé because she will be unable to state that she is graduating as a varsity student-athlete.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Plaintiff Sophia Blake

61. Plaintiff Sophia Blake is an in-state student entering her junior year at UC Davis and majoring in psychology.

62. Plaintiff Blake was a member of the UC Davis varsity women's equestrian team for the 2024-25 and 2025-26 seasons.

63. Plaintiff Blake began riding horses when she was seven years old. She began competing in eighth grade and has continued competing throughout high school and college.

64. Prior to attending UC Davis, Plaintiff Blake received numerous awards in equestrian. She was the 2024 Champion in EMO Insurance/United States Jumper Association ("USHJA") 3'3 Jumping Seat Medal Finals West, 2024 Reserve Champion in the Amateur Gladstone Cup Finals, 2024 4th overall in Pacific Coast Horse Shows Association ("PCHA") Foxfield Medal Final, and the 2024 5th overall in the California Professional Horseman's Association ("CPHA") Foundation Medal Finals. She placed 8th in the 2023 Taylor, Harris Insurance Services ("THIS") National Finals and was ranked 15th in the nation for THIS National Medal Standings. Also in 2023, she was ranked 3rd in the nation for Junior Hunter 3'3" and was ranked 11th in the nation and 4th in the region for West Coast Ranch Horse ("WCHR") Junior 3'3." She placed 5th in the 2023 USHJA Hunter Seat finals. She was the champion in the 16-17 equitation section B at the 2023 Capital Challenge. She also placed 3rd overall in the 2023 Adequan/USEF Junior Hunter National Championship – West.

65. Plaintiff Blake chose UC Davis because it had the combination of athletics, academics, and the location that she was looking for. Without the equestrian team at UC Davis, she likely would have chosen a different school.

66. While competing on the UC Davis varsity women's equestrian team, Plaintiff Blake received the year-end award for most improved on Flat during her freshman year. In her sophomore year, she was the ECAC Flat Rider of the Month, winning four out of five points. Also in her sophomore year, she was the ECAC Flat rider of the week in October, and Flat MOP against Texas A&M.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

67. Plaintiff Blake received $5,153 in athletic financial aid for the 2024-25 academic year, and $5,500 in athletic financial aid for the 2025-26 academic year.

68. Plaintiff Blake expects that she will continue to receive athletic financial aid for the remainder of her undergraduate education at UC Davis.

69. Without the varsity equestrian team, Plaintiff Blake plans to finish her undergraduate degree at UC Davis. She seriously considered transferring and spoke to coaches at other schools, but, by the time UC Davis communicated its intention to eliminate the team, it was too late. The roster spots at the other schools were already full.

70. Plaintiff Blake has been harmed by UC Davis's decision to eliminate the varsity women's equestrian team. She spent her high school junior and senior years traveling in order to build her record in the hope of competing at the Division I level, only to have her multiple years of sacrifice and hard work be stripped away by UC Davis's announcement that it intended to eliminate the team. It has also taken a toll on her because she had to decide whether to uproot her entire life and transfer or stay at UC Davis. She then learned that transferring was not truly an option as roster spots at other schools were full.

<u>Plaintiff Addyson Brown</u>

71. Plaintiff Brown is an out-of-state Plaintiff who recently finished her freshman year at UC Davis and is majoring in managerial economics.

72. Plaintiff Brown was a member of the UC Davis varsity women's equestrian team for the 2025-26 season.

73. Plaintiff Brown grew up with horses. They were a part of her life even as a little girl. During her freshman year at high school, she made it her goal to ride at the Division I level. She did everything she could to accomplish her goal. In high school equestrian, she was third in the state her junior year and reserve state champion her senior year.[8]

---

[8] Reserve Champion means second place.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

74. Plaintiff Brown chose UC Davis for the equestrian team. The team, as well as her coach Emily, made her feel at home. She is very thankful to her coach for making her a better rider.

75. At UC Davis, Plaintiff Brown started even though she was just a freshman. Her team went undefeated in the ECAC conference this year. Her team also had numerous notable wins against other schools, including TCU, which is considered a powerhouse in the sport.

76. Plaintiff Brown received zero financial aid from UC Davis.

77. Plaintiff Brown has been harmed by UC Davis's elimination of the team, Plaintiff Brown has been forced to transfer in order to continue her athletic career. She is transferring to the University of Minnesota, Crookston.

<u>Plaintiff Mya Clader</u>

78. Plaintiff Mya Clader is an in-state student who graduated from UC Davis this year with a major in human development.

79. Plaintiff Clader was a member of the varsity women's equestrian team for the 2022-23, 2023-24, 2024-25, and 2025-26 seasons.

80. Plaintiff Clader grew up riding horses and competed independently as an equestrian through high school in California and around the country. She grew up on a ranch with her mom putting her on a horse from the day she could sit up.

81. Plaintiff Clader chose UC Davis because of its Division I equestrian team and because of its academic reputation. She plans to go to nursing school and then obtain a master's degree. She would not have attended UC Davis if it did not have a Division I equestrian team.

82. Plaintiff Clader and her UC Davis women's equestrian teammates recently won the 2026 ECAC Championship title. Her team won back-to-back conference championships and went to nationals in Ocala, Florida. Her team was named UC Davis's women's team of the year in 2024. Her team was also named UC Davis's women's team of the year along with the women's volleyball team in 2026.

83. Plaintiff Clader received $2,200 per quarter in athletic financial aid from UC Davis until the most recent 2026 spring quarter, when she did not receive any athletic financial aid.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

84. Plaintiff Clader has been harmed by UC Davis's decision to strip the team of its Division I varsity status after working very hard with her teammates for four years to improve the equestrian program and achieving significant success in equestrian competitions. She found the manner in which UC Davis's Director of Athletics Rocko DeLuca told her and her teammates that the women's equestrian team was losing Division I status to be traumatizing and hurtful.

85. Although she is a graduating senior, she also is very concerned for her teammates who are suffering the elimination of their varsity team in what should be the middle of their collegiate careers.

Plaintiff Sabine Close

86. Plaintiff Sabine Close is an in-state student entering her junior year at UC Davis and is majoring in history.

87. Plaintiff Close was a member of the UC Davis varsity women's equestrian team for the 2024-25 and 2025-26 seasons.

88. Plaintiff Close was born in New Mexico and has been around horses her entire life. She began riding horses in second grade after her family moved to California. She has been competing in equestrian since third grade.

89. Plaintiff Close chose UC Davis because it is known for its academic rigor and is close to her home.

90. At UC Davis, Plaintiff Close and her women's equestrian teammates recently won the 2026 ECAC Championship title. The team ranked 7th place nationally and 2nd place at their conference in 2025. Plaintiff Close started as a jumping seat rider in fences with multiple wins. Plaintiff Close also won the MOP award during the ECAC conference semifinals her sophomore year and was also named to the ECAC all-conference team her sophomore year.

91. Plaintiff Close has received $4,500 per year in athletic financial aid.

92. Plaintiff Close expects that she will continue to receive athletic financial aid for the remainder of her undergraduate education at UC Davis.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

93. Plaintiff Close considered transferring to another university to be able to continue her college varsity equestrian career but the team rosters at her preferred schools already were full. She intends to remain at UC Davis to obtain her undergraduate degree.

94. Plaintiff Close felt immensely shocked, disrespected, and disregarded by UC Davis's decision to downgrade the women's equestrian team from Division I varsity status. She found the university's stated reasons to be suspicious and its handling of the situation unprofessional.

95. Without the Division I varsity team, Plaintiff Close is losing the opportunities for coaching and riding experiences she does not know how she will replace.

Plaintiff Katya Dundas

96. Plaintiff Katya Dundas was an in-state student and graduated in June 2026 with a bachelor of science degree in animal science, with a specialization in Equine.

97. Plaintiff Dundas was a member of the varsity women's equestrian team for the 2022-23, 2023-24, 2024-25, and 2025-26 seasons.

98. Plaintiff Dundas has been riding horses since she was two years old. She began competing in equestrian when she was five years old and has competed ever since then, including in high school and in college.

99. Prior to attending UC Davis, Plaintiff Dundas was top-five on the Appaloosa circuit each year during high school. This is the equivalent of being top-five in the world for multiple years for the youth 14-18 division in all-around.

100. Plaintiff Dundas chose UC Davis to compete in equestrian, as well as for its excellent animal sciences program. She hopes to attend its school of veterinary medicine.

101. While at UC Davis, Plaintiff Dundas and her team won three out of four conference championships in the past four years. During the 2025-26 season, the team made history as it was undefeated, ranked seventh in the nation, and had notable wins over powerhouse teams such as TCU. Additionally, Plaintiff Dundas was named to the ECAC Academic Honor Roll in both 2024 and 2025. She was also a 2025 ECAC All Academic Honorable Mention. Further, she was also named to the NCEA Academic Honor Roll in 2024, 2025, and 2026. She was also an NCEA All-

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Academic Honorable Mention in 2025, and 2026 NCEA All-Academic First Team. Further, in the 2025-26 season, Plaintiff Dundas had the highest average score for horsemanship during the season, won the most points for her team during the season, and received her team's most improved in horsemanship award. Also in 2025-26, she won the UC Davis equestrian team's most valuable player award for horsemanship.

102. Plaintiff Dundas received $2,508 in athletic financial aid her sophomore year, $4,125 in her junior year, and $6,572 her senior year. She did not receive athletic financial aid her freshman year.

103. Plaintiff Dundas feels that UC Davis's decision to eliminate the women's varsity equestrian team has erased the past years of progress and set UC Davis back in time. She also feels sorry for the incoming recruits who committed to UC Davis to compete on the team and now do not have the opportunity to do so. Many of the girls have had to sell their horses to be able to afford to go to college somewhere else after being promised a spot and a scholarship at UC Davis.

<u>Plaintiff Chloe Fares</u>

104. Plaintiff Chloe Fares is an in-state student entering her junior year at UC Davis and is majoring in applied mathematics.

105. Plaintiff Fares was a member of the varsity women's equestrian team for the 2024-25 and 2025-26 seasons.

106. Plaintiff Fares began riding horses when she was 11 years old and competed in equestrian throughout high school around the United States.

107. Plaintiff Fares competed in major shows in the East and Midwest and placed and made it to the top 25 in many finals during her junior equestrian career. She loves competing at a high level, which she feels makes her strive for perfection.

108. Plaintiff Fares chose to attend UC Davis because of its combined excellence in both Division I equestrian athletics and academics.

109. Plaintiff Fares and her UC Davis women's equestrian teammates recently won the 2026 ECAC Championship title. The team was ranked seventh nationally, which is the highest the UC Davis equestrian team has ever been ranked. The team was undefeated in its conference, which

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

is also record-breaking history. Plaintiff Fares also was awarded MOP twice, named ECAC rider of the week once, and won multiple points for the team.

110. Plaintiff Fares received $4,290 per year in athletic financial aid, which is equivalent to approximately 20.03% of her tuition.

111. Plaintiff Fares expects that she will continue to receive athletic financial aid next year as an undergraduate at UC Davis.

112. Being on a Division I team has enabled Plaintiff Fares to experience her sport in a way that individual competition does not offer. She and her teammates have been supportive, caring, and inclusive of each other. Plaintiff Fares is losing her team that she values so much.

113. Plaintiff Fares felt that she and her varsity equestrian teammates were ignored by UC Davis, despite their constant hard work as Division I student-athletes. Not only did they train hard and compete well, but they set numerous athletic records at UC Davis.

<u>Plaintiff Margaret Franke</u>

114. Plaintiff Margaret Franke is an in-state student who transferred to UC Davis for the 2022-23 academic year. She recently received her UC Davis undergraduate degree in winter 2025 with majors in communications and history.

115. Plaintiff Franke was a member of the varsity women's equestrian team for the 2022-23, 2023-24, and 2024-25 seasons.

116. Growing up, Plaintiff Franke worked odd jobs at a local horse barn to be able to afford riding lessons. She rode and worked with horses that other riders did not want and trained the horses to jump. Although she lacked the equestrian show record that many Division I equestrian student-athletes have, she was able to secure a place on the UC Davis varsity equestrian team based on her skills in the head-to-head format. She competed in equestrian at her prior college, South Dakota State University, before transferring to UC Davis.

117. Plaintiff Franke chose to transfer to UC Davis because she wanted to be part of the unique, close team environment that the women equestrian student-athletes had. She is also originally from California and wanted to return to the state.

118. During her time on the varsity women's equestrian team at UC Davis, Plaintiff Franke and her teammates were the 2023 and 2024 ECAC Conference champions. Her team was also reserve champions in 2025.

119. As a member of the UC Davis Division I varsity equestrian team, Plaintiff Franke was able to thrive competitively. She made first team All American-Flat (2025), second team All American- flat (2024), and received the All American honorable mention- flat (2023). She was also the Muriel Butler Gill Memorial Award Recipient in 2023, which is an award for leadership given to a deserving member of the UC Davis varsity women's equestrian team. Plaintiff Franke was named team captain for the 2023-24 season. She also received the NCEA All-Academic Honorable Mention – 2023, 2024 and 2025. She made the ECAC All Conference Flat Team – 2023, 2024, and 2025. She was also named to the ECAC All Tournament Flat Team in 2025. In 2024, she was named ECAC Flat Rider of the Year. In 2023, she received the ECAC Sportsmanship Award. She also holds the record for the highest flat Score (98) in UC Davis program history, which is also in the top-ten in NCEA history.

120. Plaintiff Franke received $6,200 per year in athletic financial aid money at UC Davis, which was approximately 15-20% of her tuition.

121. After Plaintiff Franke learned that UC Davis announced that the women's equestrian team would be downgraded to the club level, Plaintiff Franke felt hurt. She believed that the equestrian team, as well as the athletic financial aid provided alongside the sport, was what allowed her and other female student-athletes to continue with the sport during college. Plaintiff Franke felt that this was the only way for herself and many of her fellow female student-athletes to attend college while also continuing with the sport.

<u>Plaintiff Carmen Gonzalez</u>

122. Plaintiff Carmen Gonzalez is an in-state student entering her junior year at UC Davis and is majoring in animal science.

123. Plaintiff Gonzalez was a member of the varsity women's equestrian team for the 2024-25 and 2025-26 seasons.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

124. Plaintiff Gonzalez started riding horses when she was five years old. She first began competing when she was eleven years old and continued competing through high school in Watsonville, California.

125. Prior to college, Plaintiff Gonzalez won multiple competitions, including Champion 2023 NorCal Junior Medal Finals, Reserve Champion 2023 NCEA Medal Finals, Champion 2023 United States Hunter Jumper Association (USHJA) Hunt Seat National Class, Champion 2022 USHJA Jump Seat National Class, X2 Champion $5,000 Peregrine Equine Jr/Am Hunter Derby, Champion 2020 Les Talents Hermes, and Champion 2019 NorCal Pony Medal Final.

126. Plaintiff Gonzalez chose UC Davis because of the women's equestrian team and head coach and because of its excellent animal science program.

127. As a member of the UC Davis women's equestrian team, Plaintiff Gonzalez was named MOP in fences in the semifinals of the 2025 ECAC Conference Championships. At the last ever home meet in 2026, Plaintiff Gonzalez was named MOP with a season high score of 95.

128. Plaintiff Gonzalez received athletic financial aid of $3,533 in her first year and $3,783 in her second year at UC Davis.

129. Plaintiff Gonzalez expects that she will continue to receive athletic financial aid in the amount of $3,783 next year as an undergraduate at UC Davis.

130. Plaintiff Gonzalez was harmed by UC Davis's decision to cut the women's equestrian team's Division I status and the rushed manner in which UC Davis told her team the news in a meeting just hours before it released the public announcement. In the meeting, the university was disrespectful, lacked sympathy, and cited inaccurate information about the team's performance, failing to acknowledge that the team made history and broke records. Plaintiff Gonzalez, her teammates, and her coaches were shocked by UC Davis's decision. She doubted the truth of the university's claims that it put a lot of time and thought into the decision because it had the equestrian team engage in fundraising activities that year and then cut the team mid-season.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

131. The school did not directly inform the women's equestrian team members that, while their team was going to be downgraded, the stunt team was being upgraded to Division I varsity status. The women's equestrian team found out from the public press release.

Plaintiff Liliana Grosz

132. Plaintiff Liliana Grosz is an in-state student entering her sophomore year at UC Davis and is majoring in business.

133. Plaintiff Grosz was a member of the varsity women's equestrian team for the 2025-26 season.

134. Plaintiff Grosz has been riding horses since she was a young child and has been competing in equestrian for the past 12 years.

135. Prior to college, Plaintiff Grosz qualified and competed in the highest level national equitation finals on the east coast, such as the Maclay Finals, Dover/USEF Finals, Capital Challenge, Reserve Champion R.W. Mutch Equitation Championship, and Reserve Champion CPHA Style of Riding Finals. She also placed 10th in the NHS 3 foot 3 inches Medal Final in Kentucky Horse Park.

136. Plaintiff Grosz chose UC Davis because of its varsity equestrian team, as well as its strong academics. She never would have considered UC Davis without the opportunity to compete in Division I on the equestrian team.

137. At UC Davis, her team was undefeated in conference for the first time in history, was the number one ranked seed in the conference championship for the first time in school history, and ranked seventh nationally after the fall semester. Also, as a freshman, Plaintiff Grosz was a starter in the fall semester.

138. Plaintiff Grosz received 10% of her tuition in athletic financial aid.

139. Due to UC Davis announcing in January 2026 that it was eliminating the Division I women's equestrian team, Plaintiff Grosz now faces the decision of whether to stay at UC Davis or possibly transfer for her junior year to continue her collegiate athletic career.

140. UC Davis's decision to eliminate its varsity women's equestrian team has harmed Plaintiff Grosz. She now has to decide whether to continue at UC Davis or transfer for her junior

year in order to continue her collegiate athletic career. By the time UC Davis informed Plaintiff Grosz and her teammates of its intent to eliminate the team, it was too late to transfer. Plaintiff Grosz inquired with other schools about transferring, but the schools she liked informed her that they had no roster spaces available.

141. Plaintiff Grosz believes that UC Davis clearly did not research its reasons to eliminate its varsity women's equestrian team. UC Davis erroneously claimed that the team had no chance to make Nationals, even though UC Davis was ranked seventh at the time and the top eight schools are invited. She also believes it was shady for UC Davis to recruit incoming freshmen while not being forthright about its intention to eliminate the team. As a member of the varsity women's equestrian team, UC Davis always made her feel like a second-hand athlete and she never felt respected by the athletic department.

Plaintiff Laura Holliday

142. Plaintiff Laura Holliday is an in-state student entering her senior year at UC Davis and is majoring in Biological Sciences.

143. Plaintiff Holliday was a member of the UC Davis varsity women's equestrian team for the 2023-24, 2024-25, and 2025-26 seasons.

144. Plaintiff Holliday has been riding horses since before she can remember. Competing in equestrian has provided her with some of the hardest moments of her life, as well as such joy and appreciation for how competing in equestrian has played such a positive role in her life. She has been competing since she was approximately eight years old and continued since then through high school as well as college.

145. Prior to attending UC Davis, in 2022, Plaintiff Holiday won 2nd place for the American Quarter Horse Association ("AQHA") Level 1 West Youth Rookie Western Pleasure and 3rd place for the AQHA Level 1 West Youth 14-18 Showmanship. In 2023, she was 7th place in the American Quarter Horse Youth Association ("AQHYA") World Show Level 2 Youth 14-18 Trail and was a finalist in the Level Three Youth 14-18 Trail and Showmanship events. She was also a finalist in the Level 2 Horsemanship event. In 2024, she was the finalist at the AQHYA World Show Level 2 14-18 in Horsemanship.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

146. Plaintiff Holliday chose UC Davis due to its academics, team environment, and varsity equestrian coaching staff. Before being accepted to UC Davis, she spent all of her free time riding and showing around the country in order to be recruited by a university like UC Davis. Plaintiff Holliday was beyond excited when she learned that she had been accepted to UC Davis and would be able to compete as an athlete on its varsity women's equestrian team.

147. During her collegiate career on the varsity women's equestrian team at UC Davis, her team won the ECAC conference in the 2023-24 and 2025-26 seasons. Also in 2025-26, her team went undefeated in conference and was ranked seventh nationally. Plaintiff Holliday received numerous honors, including being named ECAC All Academic Second Team 2024-25 season, ECAC All Academic Honor Role for 2024-25, and UC Davis Most Improved Horseman Rider for the 2023-24 and 2024-25 seasons.

148. Plaintiff Holliday receives approximately $2,000 a quarter in athletic financial aid, totaling approximately $6,000 in athletic financial aid a year.

149. Plaintiff Holliday has been harmed by UC Davis's decision to eliminate its varsity women's equestrian team. She feels as though a piece of her is now missing, as she can no longer enjoy the sport she loves with some of her best friends. Further, she will miss out on competing her senior year due to UC Davis eliminating the team. It is not practical for her to transfer as she is entering her senior year and has to complete her academics. If she were to transfer, it would set her back academically and she would not graduate on time.

<u>Plaintiff Hannah Janicki</u>

150. Plaintiff Hannah Janicki is an in-state student entering her junior year at UC Davis and is double-majoring in design and French.

151. Plaintiff Janicki was a member of the varsity women's equestrian team for the 2025-26 season.

152. Plaintiff Janicki started riding horses in the third grade with her sister and has ridden in a variety of disciplines. She first began competing in fourth grade.

153. Plaintiff Janicki chose UC Davis because of its excellent academic program and the women's varsity equestrian team.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

154. Plaintiff Janicki and her UC Davis equestrian teammates made the program's history several times in the 2025-26 season. The team was undefeated in its conference for the first time and defeated TCU for the first time in the program's history. Plaintiff Janicki is on the Reiner's squad, which also made program history this season by defeating Texas A&M and a few other schools for the first time.

155. Plaintiff Janicki has not received any athletic financial aid from UC Davis.

156. Plaintiff Janicki planned to continue at UC Davis in 2026-27 and an extra year in 2027-28 to continue to compete as a Division I equestrian. She hoped to become a full-time starter next year, putting her on the map in the reining industry, which would carry her reputation outside of college and after graduation when she intended to establish herself professionally in the National Reining Horse Association (NRHA) world. Plaintiff Janicki cannot transfer because it would mean starting her collegiate experience over, when she is entering her senior year.

157. Now that UC Davis has eliminated the varsity women's equestrian team, Plaintiff Janicki is revising her academic plans in an effort to graduate early in 2027. Because she will not have the opportunity to compete and excel on a Division I college equestrian team, she also has had to change her future plans professionally. Due to financial constraints, she will not be able even to ride or show horses for the next few years while she finishes school and until she has a stable job. This will set her back significantly in establishing a professional equestrian career. For now, she is focusing on her academic major and considering her career options related to that.

158. In addition to the harm discussed above, Plaintiff Janicki was suffering the emotional toll of having to end her college equestrian career and knowing that her teammates also are suffering.

159. Plaintiff Janicki also was confused and upset by the manner in which UC Davis informed them that the women's equestrian team that it was being eliminated. UC Davis's athletic director Rocko Luca told them in a quick meeting without any sympathy. He also told them in a threatening way that the student-athletes should not fight the decision because it would not make a difference and UC Davis was not open to communication.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

160. Plaintiff Janicki felt as though UC Davis did not notice the women's equestrian team and now was abandoning her and her teammates. The university ignored the tremendous amount of hard work and passion that she and her teammates poured into the equestrian team, which made them one of the best teams in the NCEA. The women's equestrian team also put more manual labor into their sport than other teams on campus by cleaning the equestrian property on meet days, personally caring for the horses and cleaning their stalls, and cleaning their equipment themselves, all with little help from UC Davis.

Plaintiff Nicole Jimenez

161. Plaintiff Nicole Jimenez is an out-of-state student in her senior year at UC Davis majoring in Animal Biology. She will continue at UC Davis into a fifth year this coming academic year to take additional classes in order to graduate.

162. Plaintiff Jimenez was a member of the UC Davis varsity women's equestrian team for the 2025-26 season and was supposed to compete on the team in the 2026-27 season.

163. Plaintiff Jimenez has been riding horses since she was approximately nine years old and began competing in equestrian when she was approximately 12 years old. She competed throughout high school.

164. Plaintiff Jimenez chose UC Davis for its pre-veterinary and veterinary programs. She plans on attending veterinary school after she graduates. She also chose UC Davis because of its equestrian program, but she delayed trying out for the team at first in order to concentrate on her academics due to the difficulty of her major. She joined the team her senior year and intended to continue competing as a fifth year senior as she is taking additional classes in order to graduate.

165. Prior to attending UC Davis, Plaintiff Jimenez was the Reserve High Point Champion – Florida Circuit, Reserve Regional Champion in the AQHA – Region 6, Regional Circuit Champion in the AQHA – Region 6, and two-time national Youth Equestrian Development Association ("YEDA") qualifier.

166. During her time at UC Davis, both she and her teammates were ECAC conference champions and went undefeated in their conference. The team was also ranked seventh nationally and beat TCU for the first time ever. TCU is a powerhouse in the sport.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

167. Plaintiff Jimenez received a Provost Scholarship, which is a four-year academic scholarship which is worth approximately $13,250 per year. She did not receive athletic financial aid.

168. Plaintiff Jimenez has been harmed by UC Davis's decision to eliminate the varsity women's equestrian team. She intended to compete on the team in the forthcoming season, but now she will not have that opportunity. She will finish her undergraduate experience at UC Davis without being a varsity student-athlete.

Nicole Shroyer

169. Plaintiff Nicole Shroyer is an in-state student and currently a senior at UC Davis majoring in communications. She graduated in June 2026.

170. Plaintiff Shroyer was a member of the varsity women's equestrian team for the 2022-23, 2023-24, 2024-25, and 2025-26 seasons. She redshirted her freshman year and still has one more year of athletic eligibility left.

171. Plaintiff Shroyer has been riding horses since she could walk. She began competing when she was eight years old and has continued competing to this day. She has won numerous awards, including American Vaulting Association ("AVA") Region 2 Champion in 2018, 2021 West Coast Reining Horse Association year-end reserve champion green as grass 2021, 2022 West Coast Reining Horse Association year end top 5 youth 14-18, and Reigning by the Bay Green Reiner reserve champion.

172. Plaintiff Shroyer chose UC Davis specifically because of its equestrian team.

173. At UC Davis, Plaintiff Shroyer won the 2023 freshman of the year award, 2023 and 2024 most improved award, and 2025 Reining Rider of the year award. She was also named the MOP reward five times, was the two-time ECAC Reigning Rider of the week, and two-time ECAC and NCEA All-Academic Honorable Mention. Plaintiff Shroyer was also the 2024 ECAC Conference Reining MOP. Plaintiff Shroyer holds the second highest reigning score in program history at UC Davis.

174. Plaintiff Shroyer was harmed by UC Davis's decision to eliminate the team. They were told the team would be cut at the end of the season, which caused her emotional distress and

she felt that both she and her teammates were abandoned by the athletics department. She also has one more year of athletic eligibility left and would have competed for an additional year at UC Davis if it had not eliminated the team.

Plaintiff Cavan Smith

175. Plaintiff Cavan Smith is an in-state student and is entering her sophomore year at UC Davis and is majoring in sociology organizational studies.

176. Plaintiff Smith was a member of the UC Davis varsity women's equestrian team for the 2025-26 season.

177. Plaintiff Smith started riding horses at summer camp when she was seven years old. Just a few years later, when she was ten, she began competing as an equestrian and has been competing since then.

178. Before attending UC Davis, Plaintiff Smith won first place at the 2023 Varsity Open Championship at the International Equestrian Association ("IEA") Varsity Open Championship for Zone 10 (California, Arizona, and Hawai'i), third place in the IEA Varsity Open Championship National Finals in 2023, and was the 2025 lead dressage rider in the 2025 IEA Nationals.

179. Plaintiff Smith chose UC Davis because she wanted to continue competing at a high level, be part of a Division I varsity college equestrian team, and stay in California. She visited UC Davis and California State University, Fresno, and felt immediately that UC Davis was the right fit for her. She fell in love with the equestrian team and coach, whom she had admired for years, and the campus.

180. During Plaintiff Smith's time on the UC Davis women's equestrian team, the team was ranked within the top ten throughout the 2025-26 season and was undefeated in its conference. The team also beat TCU for the first time in history, a major accomplishment because TCU is considered a powerhouse in the sport. The team was ranked first in the conference for the first time in history. Personally, Plaintiff Smith received MOP honors in flat against University of Tennessee, Martin. She has been in the lineup and performed well at every meet, an uncommon achievement as a freshman.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

181. Plaintiff Smith has received $3,576 per year in athletic financial aid money.

182. Plaintiff Smith expects that she will continue to receive athletic financial aid next year at UC Davis.

183. The elimination of the varsity women's equestrian team has created a lot of mental stress for Plaintiff Smith. She was expecting to compete as a varsity equestrian student-athlete for four years at UC Davis. Plaintiff Smith now has lost the opportunity to compete at the varsity collegiate level in the sport in which she trained for years. She also has lost opportunities to build her resumé professionally with activities related to being on a Division I athletic team, such as participating in the Student-Athlete Advisory Committee ("SAAC").

<u>Plaintiff Zadie Stack</u>

184. Plaintiff Zadie Stack is an in-state student and is entering her junior year after transferring to UC Davis in the 2025-26 academic year. She is majoring in communications and minoring in technology management.

185. Plaintiff Stack was a member of the UC Davis varsity women's equestrian team for the 2025-26 season.

186. Plaintiff Stack discovered her love of riding horses at a young age, after being introduced to it by her grandmother. In third grade, she began taking riding lessons. She started competing competitively as an equestrian in eighth grade and has been competing since.

187. Outside of the UC Davis team, Plaintiff Stack has won multiple 1.20-meter championships and won a 10,000 Grand Prix. Plaintiff Stack and her horse won 2025 Zone 10 horse of the year in the 1.20/1.25-meter amateur jumpers. Plaintiff Stack was the champion of the West Coast Equestrian ("WCE") medal final. She was also the Reserve champion of the National Horse Show ASPCA MacClay Regionals for Zone 8. She placed fourth in Talent Search finals and was awarded the sportsmanship award at the Oaks horse show in Orange County.

188. Plaintiff Stack chose UC Davis because she believed that it had the best academic program among the universities that have equestrian teams, the best team morale, and the best location.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

189. While on the UC Davis equestrian team, Plaintiff Stack helped to provide social media coverage for the team.

190. Plaintiff Stack has not received any athletic scholarship money from UC Davis. She was told when she transferred that the school had no money for new recruits.

191. Plaintiff Stack was harmed by UC Davis's announcement of its intention to eliminate the women's varsity equestrian team. She has three years of athletic eligibility left. UC Davis communicated its intent to eliminate the team at a point where it was too late for her to transfer. Plaintiff Stack inquired about transferring and was told by potential schools that there were no roster spots available. Further, it was Plaintiff Stack's dream to compete in equestrian specifically at UC Davis. Now she will be unable to continue her varsity collegiate athletic career. It will also hinder her ability to compete in her sport because she will no longer have access to team horses at UC Davis. The team horses in equestrian are more athletic than horses that are not involved in the sport. Further, her personal horse is stabled over two hours away from campus. She also will no longer have the coaching that she would have had if UC Davis continued the team.

192. Plaintiff Stack was concerned by the inconsistency between UC Davis's claim that the women's equestrian team was being downgraded due to financial issues and UC Davis's announcement that it was providing a half-million dollars in renovations for the men's football, baseball, and basketball teams' facilities.

Plaintiff Lola Sullivan

193. Plaintiff Lola Sullivan is an out-of-state student entering her senior year at UC Davis who is majoring in managerial economics and double-minoring in philosophy and sociology (pre-law).

194. Plaintiff Sullivan was a member of the UC Davis varsity women's equestrian team for the 2023-24, 2024-25 and 2025-26 seasons.

195. Plaintiff Sullivan fell in love with horses and riding when she had her first lesson at just four years old and was a competitive equestrian throughout high school in Oregon.

196. Prior to college, Plaintiff Sullivan won numerous championships across multiple divisions up and down the West Coast, including in Canada. She won the 2023 Zone 9 Horse of

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

the Year for the 3'3 Junior Hunters,[9] 2023 Zone 9 Reserve World Champion Hunter Rider for the 3’3 Junior Hunters, 2023 Oregon Hunter Jumper Association champion in the 3’3 Junior Hunters, and 2023 Reserve Circuit Champion at Desert Horse Park in the 3’3 Junior Hunters. She also won multiple Championships and Reserve Championships at Thunderbird Show Park, Desert Horse Park, and the Oregon High Desert Classic in the 3’3 and 3’6 Junior Hunter division.

197. Plaintiff Sullivan chose UC Davis because it offered her a spot on the varsity women’s equestrian team roster and the team’s environment. She also chose it because UC Davis had the best academic program among the universities with a Division I varsity equestrian team.

198. While on the UC Davis varsity equestrian team, in her freshman year, Plaintiff Sullivan won the ECAC Sportsmanship Award, UC Davis Equestrian Sportsmanship Award, and UC Davis Equestrian Leadership Award. In her sophomore year, she won the ECAC Sportsmanship Award, UC Davis Equestrian Sportsmanship Award, ECAC All-Academic Honor Roll, UC Davis Equestrian Excellence in Horse Care Award, UC Davis Equestrian Community Service Award, and UC Davis Equestrian Academic Achievement Award. In her junior year, Plaintiff Sullivan was named NCEA Student-Athlete of the Month for October and won the ECAC Sportsmanship Award, UC Davis Equestrian Sportsmanship Award, UC Davis Equestrian Scholar-Athlete Award, and the UC Davis Equestrian Workhorse Award.

199. This past season, Plaintiff Sullivan and her teammates were ranked seventh in the nation and were undefeated in conference play. Her team also had the first win against TCU in the program’s history.

200. Plaintiff Sullivan received $2,359 in athletic financial aid per quarter and her textbooks were covered.

201. Plaintiff Sullivan expects that she will continue to receive athletic financial aid for the remainder of her undergraduate education at UC Davis.

202. Plaintiff Sullivan was devastated by UC Davis’s decision to eliminate the varsity women’s equestrian team. The news was made worse by the casual, disrespectful manner in which

---

[9] This award is an individual award as she was the only rider of the horse.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

the UC Davis Director of Athletics, Rocko Luca, informed the team's members they were being cut. That was, unfortunately, in line with the poor treatment and lack of respect that the university gave the women's equestrian team throughout Plaintiff Sullivan's time with the team. Despite their exceptional achievements in their sport for UC Davis, the school treated her and her teammates like second-class student-athletes. Also, the late timing of the university's announcement left Plaintiff Sullivan and her teammates with few to no options to transfer schools and still be able to compete on a Division I equestrian team next year, or even to transfer schools at all. For Plaintiff Sullivan, transferring to a different school to continue her collegiate athletic career was untenable, as she is entering her senior year and could not afford to be set back academically. She does not believe that a significant portion of her academic credits would transfer to a different school, which would delay her graduation.

<u>Plaintiff Mylea Trimble</u>

203. Plaintiff Mylea Trimble is an in-state student who graduated from UC Davis this year with a major in communications and minor in human development. She has two years of athletic eligibility left and is continuing at UC Davis and pursuing her masters.

204. Plaintiff Trimble was a member of the varsity women's equestrian team for the 2023-24, 2024-25 and 2025-26 seasons.

205. Plaintiff Trimble's family has had horses for her entire life and she has been riding horses for as long as she can remember. Plaintiff Trimble began competing in equestrian in seventh grade, and has continued competing since then, including through high school and to this day.

206. Prior to college, Plaintiff Trimble was the 2021 National Reined Cow Horse Association ("NRCHA") Southwest Region Reserve Champion (Youth Limited Division), 2021 California Reined Cow Horse Association ("CRCHA") Year-End Champion (Youth Limited Division), 2020 CRCHA Year-End 5th Place (Youth Limited Division), 2019-20 Season NRCHA World Show Qualifier (Youth Limited), and received multiple NRCHA and CRCHA class wins and top finishes (Youth Limited Division).

207. Plaintiff Trimble chose UC Davis because of the women's equestrian team and its culture. She believed it was an environment in which she could grow as an equestrian and continue

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

to push herself in the sport. She also loved the campus and being able to stay in California, relatively close to home but still experiencing something new.

208. Plaintiff Trimble and her equestrian teammates at UC Davis have had significant achievements. The women's varsity equestrian team recently won the 2026 ECAC Championship title. The team also was named 2024 ECAC Champions, 2024 National Championship Qualifiers, and 2025 ECAC Reserve Champions. This season, the team defeated TCU for first time in program history. Her team was ranked in the top 10 all-season for the first time, was undefeated in the ECAC conference for the first time, and ranked number 1 seed for ECAC conference championships for the first time. Individually, Plaintiff Trimble made the NCEA All Academic Second Team, NCEA Honor Roll, ECAC All Academic Second Team, ECAC Honor Roll, and UC Davis Equestrian Honor Roll each academic year she was on the time for a total of three awards. She was named MOP in the team's meet against TCU and served as a SAAC Officer at UC Davis for two years.

209. Plaintiff Trimble received $5,952 plus the cost of books in 2025-26 in athletic financial aid. In prior academic years, she received lower amounts.

210. Next year, in 2026-27, Plaintiff Trimble expects that she will receive $5,952 plus the cost of books in athletic financial aid as she continues at UC Davis as she pursues her master's degree in management. She met with UC Davis's Assistant Athletic Director, who confirmed that.

211. UC Davis's elimination of the varsity women's equestrian team has caused Plaintiff Trimble to lose opportunities tied to being a Division I student-athlete, including the ability to continue serving and growing in leadership roles such as her involvement with SAAC. She would have continued as an SAAC Officer if the team was continued next year. These experiences were important for her development beyond athletics and their loss has real consequences for her future opportunities. She also has suffered the emotional cost of losing the team that has been a central part of her college experience and the community that has shaped who she is.

212. Plaintiff Trimble believes that UC Davis's decision-making process regarding eliminating the women's equestrian team was unfair and unjust and the reasons it cited for cutting the team were false. She was harmed by the manner in which the university informed the team

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

mid-season, when they were having a record-breaking year. The mid-season announcement left her teammates without opportunities to transfer to other schools as rosters are confirmed early in the season and there were not roster spots available at other schools. Further, while Plaintiff Trimble graduated this year, she has at least two years of athletic eligibility remaining. She would have continued competing on the varsity women's equestrian team if it was continued while she pursues her master's degree at UC Davis.

***Defendant***

213. Defendant Regents of the University of California, on behalf of its Davis campus, is a recipient of federal funds and is required to comply with Title IX and all of its implementing regulations.

214. Defendant Regents of the University of California on behalf of its Davis campus, is a public entity that does business in Davis, California, by operating the university campus of UC Davis.

215. Under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*, and the regulations adopted pursuant to 34 C.F.R. Part 106, University of California, Davis and Regents of the University of California must provide equal opportunities to women and men in every program that UC Davis offers, including equal athletic financial aid to UC Davis's female and male varsity student-athletes.

## FACTUAL ALLEGATIONS

### TITLE IX BARS UC DAVIS FROM DISCRIMINATING AGAINST ITS FEMALE STUDENT-ATHLETES ON THE BASIS OF THEIR SEX

216. Title IX says, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

217. Because UC Davis receives federal financial assistance, its varsity athletic program is subject to Title IX, and UC Davis must comply with Title IX's requirements. 20 U.S.C. § 1687.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

218. When schools segregate their varsity athletic programs on the basis of sex, as UC Davis does, their violations of Title IX in those programs constitute intentional sex discrimination. *See Neal v. Board of Trustees of the Cal. State Univs*., 198 F.3d 763, 772 n.8 (9th Cir. 1999).

219. Applying Title IX to intercollegiate athletics, the Office for Civil Rights ("OCR") has adopted regulations requiring educational institutions receiving federal funds to "provide equal athletic opportunity for members of both sexes." 34 C.F.R. § 106.41(c).

220. The regulations, codified at 34 C.F.R. Part 106 (the "Regulations") are enforced by OCR.

221. In 1979, OCR issued a policy interpretation of Title IX and the Regulations as applied to intercollegiate athletics at 44 Fed. Reg. 71,413 (Dec. 11, 1979) (the "OCR Policy Interpretation").[10]

222. The OCR Policy Interpretation sets forth the area of Title IX compliance applicable to UC Davis's varsity intercollegiate athletics programs at issue in this case: equal athletic financial assistance.

**<u>Title IX's Equal Athletic Financial Aid Requirements</u>**

223. Title IX's requirements for equal athletic financial aid have been in existence since 1979.

224. As OCR explained in 1998: "With regard to athletic financial assistance, the regulations promulgated under Title IX provide that, when a college or university awards athletic scholarships, these scholarship awards must be granted to 'members of each sex in proportion to the number of students of each sex participating in intercollegiate athletics.' 34 C.F.R 106.37(c)." Office for Civil Rights, U.S. Department of Education ("DOE"), Dear Colleague Letter at 2 (July 23, 1998).[11]

---

[10] Available at https://www.ed.gov/laws-and-policy/civil-rights-laws/federal-register-notices-and-regulations/policy-interpretation-title-ix-and-intercollegiate-athletics.

[11] Available at https://www.ed.gov/laws-and-policy/civil-rights-laws/title-ix-and-sex-discrimination/title-ix-key-issues/title-ix-and-athletics/dear-colleague-letter-bowling-green-state-university.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

225. The regulation cited by OCR, 34 C.F.R. §106.37 (c), provides:

> (1) To the extent that a recipient awards athletic scholarships or grants-in-aid, it must provide reasonable opportunities for such awards for members of each sex in proportion to the number of students of each sex participating in interscholastic or intercollegiate athletics.
>
> (2) Separate athletic scholarships or grants-in-aid for members of each sex may be provided as part of separate athletic teams for members of each sex to the extent consistent with this paragraph and § 106.41.

226. The OCR Policy Interpretation states, among other things, its interpretation of the athletic financial aid provision quoted above:

> The Policy - The Department will examine compliance with this provision of the regulation primarily by means of a financial comparison to determine whether proportionately equal amounts of financial assistance (scholarship aid) are available to men's and women's athletic programs. The Department will measure compliance with this standard by dividing the amounts of aid available for the members of each sex by the numbers of male or female participants in the athletic program and comparing the results. Institutions may be found in compliance if this comparison results in substantially equal amounts or if a resulting disparity can be explained by adjustments to take into account legitimate, nondiscriminatory factors…
>
> Application of the Policy - This section does not require a proportionate number of scholarships for men and women or individual scholarships of equal dollar value. It does mean that the total amount of scholarship aid made available to men and women must be substantially proportionate to their participation rates.

44 Fed. Reg. 71,415 (Dec. 11, 1979).

227. On July 23, 1998, OCR discussed and clarified how it interpreted and would enforce Title IX's athletic financial aid requirements:

> With regard to athletic financial assistance, the regulations promulgated under Title IX provide that, when a college or university awards athletic scholarships, these scholarships awards must be granted to "members of each sex in proportion to the number of students of each sex participating in …intercollegiate athletics." 34 C.F.R 106.37(c)…
>
> … It is important to note that it is not enough for a college or university merely to assert a nondiscriminatory justification. Instead, it will be required to demonstrate that its asserted rationale is in fact reasonable and does not reflect underlying discrimination…

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

> … If any unexplained disparity in the scholarship budget for athletes of either gender is 1% or less for the entire budget for athletic scholarships, there will be a strong presumption that such a disparity is reasonable and based on legitimate and nondiscriminatory factors. Conversely, there will be a strong presumption that an unexplained disparity of more than 1% is in violation of the "substantially proportionate" requirement.

OCR, U.S. DOE, *Dear Colleague Letter* at 2-4 (July 23, 1998).[12]

228. Because Title IX and its implementing Regulations are federal law, NCAA and conference rules cannot justify violations of them.

229. The Title IX Regulations state: "The obligation to comply with this part is not obviated or alleviated by any rule or regulation of any organization . . . or association which would render any applicant or student ineligible to participate or limit the eligibility or participation of any applicant or student, on the basis of sex, in any education program or activity operated by a recipient and which receives Federal financial assistance." 34 C.F.R. 106.6(c).

230. As a result, if UC Davis chose to sponsor women's and men's varsity athletic teams with NCAA or conference scholarship limits that allowed UC Davis to award its male student-athletes far more athletic financial aid than its female student-athletes— and then did so— UC Davis would be violating Title IX.

231. Any NCAA or conference limits would not justify UC Davis's violation of the law.

**UC DAVIS HAS BEEN AND IS DISCRIMINATING AGAINST ITS FEMALE STUDENT-ATHLETES ON THE BASIS OF THEIR SEX.**

232. UC Davis has discriminated and is discriminating against its female student-athletes in violation of Title IX's equal athletic financial aid requirements.

/ /

/ /

---

[12] The OCR's Title IX Investigator's Manual states that the unduplicated participation count should be used in this analysis. *See, e.g.*, Investigator's Manual, https://eric.ed.gov/?id=ED400763, at 21 (stating that "[p]articipants who participate on more than one team are to be counted only once" in assessing financial-aid claims).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**UC DAVIS'S VIOLATIONS OF TITLE IX'S EQUAL ATHLETIC FINANCIAL AID REQUIREMENTS.**

233. UC Davis offers athletic financial aid to members of its women's and men's varsity athletic teams.

234. UC Davis has not provided and does not provide athletic financial aid to its female varsity student-athletes in proportion to their athletic participation rates and, accordingly, intentionally discriminates against its female varsity student-athletes on the basis of their sex in violation of Title IX.

235. At all times relevant to this case, UC Davis has been and is responsible for ensuring its compliance with Title IX's requirements to provide proportional athletic financial aid to its female student-athletes.

**UC DAVIS'S COLLEGIATE CONSULTING REPORT SHOWS THE SCHOOL IS AND WILL BE DEPRIVING ITS FEMALE STUDENT-ATHLETES OF EQUAL ATHLETIC FINANCIAL AID.**

236. On January 9, 2026, when UC Davis announced that it was eliminating its women's varsity equestrian team, it said its decision was based on an "independent external assessment" by Collegiate Consulting.

237. Plaintiffs' Counsel obtained a copy of the Collegiate Consulting Report and have attached an excerpt as **Exhibit B.** On page 37, the Collegiate Consulting Report states that, in the current 2025-26 academic year, women are 59% of the UC Davis varsity athletes and are receiving only 56% of the $10,155,570 in athletic financial aid, which the Report equates to $5,639,553. UC Davis's male student-athletes are receiving the rest.

238. Also on page 37, the Collegiate Consulting Report states that the university is currently giving $16,542 in athletic financial aid per student-athlete to the men and $14,648 in athletic financial per student-athlete to the women.

239. Based on that information, overall, women are receiving $302,536 less than they should be and men are getting that much more.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

240. Moreover, because UC Davis is giving its male student-athletes $4,516,017 in athletic financial aid (when they should receive less and the women should receive more), unless the school is going to claw back that money from the men and pay it to the women, it would have to pay its female student-athletes an additional $729,189 for them to receive the proportional share that Title IX requires. That is for one year alone.

241. The Collegiate Consulting Report further shows that, for the upcoming 2026-27 academic year, the inequality in UC Davis's athletic financial aid will get worse. Page 38 of the report says that, in 2026-27, after UC Davis makes stunt a varsity team, women will be 61% of the varsity athletes and will receive only 56% of the $10,331,910 in athletic financial aid. According to the report, UC Davis will give $16,542 in athletic financial aid per student-athlete to the men and $13,370 in athletic financial aid per student-athlete to the women.

242. Based on this information, UC Davis will provide its female student-athletes with $532,103 less than they should receive and its male student-athletes with that much more.

243. Because UC Davis will give its male student-athletes $4,516,017 in athletic financial aid (when they should receive less and the women should receive more), unless UC Davis is going to claw back that money from the men and pay it to the women, it will have to pay its female student-athletes an additional $1,379,958 for them to receive the proportional share that Title IX requires.

**UC DAVIS'S EQUITY IN ATHLETICS DISCLOSURE ACT REPORTS CONFIRM THAT THE HAS BEEN DEPRIVING ITS FEMALE STUDENT-ATHLETES OF EQUAL ATHLETIC FINANCIAL AID FOR YEARS**.

244. Under the federal Equity in Athletics Disclosure Act ("EADA"), 20 U.S.C. 1092, "to make prospective students aware of a school's commitment to providing equitable athletic opportunities for its men and women students," https://surveys.ope.ed.gov/athletics/#/, UC Davis and all other co-ed educational institutions of higher education participating in a federal student aid program must annually submit reports to the U.S. Department of Education with, among other things, their varsity intercollegiate athletic participation and athletic financial aid data.

245. UC Davis's EADA reports show that, for nearly a decade, female varsity student-athletes at UC Davis have been deprived of athletic financial aid in proportion to their participation in UC Davis athletics, and the difference in the proportion has always been greater than 1%

246. The information summarized in the chart attached hereto as **Exhibit A**, and paragraphs below (all of which use unduplicated participation counts) was submitted and verified as accurate by UC Davis to the federal government pursuant to the EADA.[13]

| Survey Year | Percent Un-duplicated Count Male Athletes | Percent Un-duplicated Count Female Athletes | Men's Team Athletic Student Aid | Women's Team Athletic Student Aid | Total $ Aid Awarded to Males/ Females | % Actual Aid Awarded to Males | % Actual Aid Awarded to Females | Female Financial Aid Gap as Percent[1] | Female Financial Aid Gap as $ Amt[2] | Female Financial Aid Damages[3] |
|---|---|---|---|---|---|---|---|---|---|---|
| 2017-18 | 48.07% | 51.93% | $4,084,771 | $4,118,439 | $8,203,210 | 49.79% | 50.21% | 1.72% | $141,474 | $294,306 |
| 2018-19 | 46.35% | 53.65% | $3,961,810 | $4,076,726 | $8,038,536 | 49.29% | 50.71% | 2.94% | $236,285 | $509,831 |
| 2019-20 | 43.56% | 56.44% | $4,136,623 | $4,190,552 | $8,327,175 | 49.68% | 50.32% | 6.11% | $509,205 | $1,168,941 |
| 2020-21 | 45.29% | 54.71% | $4,455,125 | $4,417,376 | $8,872,501 | 50.21% | 49.79% | 4.92% | $436,573 | $963,904 |
| 2021-22 | 41.28% | 58.72% | $3,809,197 | $4,513,324 | $8,322,521 | 45.77% | 54.23% | 4.49% | $373,660 | $905,185 |
| 2022-23 | 41.09% | 58.91% | $4,224,796 | $4,650,607 | $8,875,403 | 47.60% | 52.40% | 6.51% | $577,560 | $1,405,469 |
| 2023-24 | 40.48% | 59.52% | $4,516,017 | $5,639,553 | $10,155,570 | 44.47% | 55.53% | 3.99% | $405,429 | $1,001,648 |
| 2024-25 | 42.29% | 57.71% | $4,818,992 | $6,180,518 | $10,999,510 | 43.81% | 56.19% | 1.52% | $167,217 | $395,398 |

[1] "Percent Unduplicated Count Female" minus "Percent Actually Awarded" which expresses the dollar shortfall experienced by females as a percent of total athletic student aid compared to what female athletes should have received. The percentage females should have received should have been equal to the percentage UNDuplicated count female athletes. Note: a variance of one percent is permitted.

[2] "Percent UNDuplicated Count Female" times Total $ Aid Awarded to Male/Female Athletes" minus "Women's Team Athletic Student Aid" expresses the answer to "If women did not receive the financial aid equal to their UNDuplicated count percentage, how much were they shortchanged in dollars?

[3] "Men's Team Athletic Student Aid" divided by "Percent Unduplicated Count Male Athletes" minus "Total $ Awarded to Males/Females." The first phrase of the equation yields the total amount of financial aid that should have been awarded if the amount awarded to males was equal to their UNDuplicated participation count percent. Then the second phrase subtracts the total amount of financial aid in dollars that was actually awarded to males and females. The resulting amount is the number of dollars female athletes should have received if, added to what they actually received, the total amount would equal their UNDuplicated count percentage. This is the amount male athletes were overpaid which cannot be practically be clawed back. Therefore, women should be entitled to recover this amount since men were improperly overcompensated.

247. As the EADA data shows, UC Davis deprived its female student-athletes of between $141,474 and $577,560 annually for academic years 2017-18 through 2024-25.[14] Due to

---

[13] UC Davis has exclusive access to its Title IX athletic participation data and has not yet disclosed that information to Plaintiffs or the public. For that reason, Plaintiffs rely in this Complaint on EADA data that UC Davis has submitted to the U.S. Department of Education, which courts have held is appropriate. *See*, *e.g.*, *Mansourian v. Board of Regents of Univ. of California*, 602 F.3d 957, 968 (9th Cir. 2010) (finding that "EADA reports contain[ed] ample data demonstrating that [the educational institution] could not satisfy the substantial proportionality option…").

[14] See Exhibit A, attached hereto, column titled "Female Financial Aid Gap as $ Amt."

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

UC Davis overpaying financial aid to male student-athletes, the estimated monetary damages are even higher, ranging between $294,306 and $1,168,941 for the academic years 2017-18 through 2024-25.[15]

248. On January 9, 2026, UC Davis announced to the equestrian team that it would downgrade the women's equestrian team from Division I to "club sport" status in the 2026-27 academic year. The school announced the news to the public on January 9, 2026. In its letter to the varsity equestrian student-athletes and their families, UC Davis stated that it pledged to honor the scholarships for all members of the team *through* their graduation date if those members of the former team remained at UC Davis.

249. As a result, Plaintiffs who were on the women's varsity equestrian team and remain undergraduate students at UC Davis continue to be harmed by the university's discriminatory choice to offer proportionately more athletic financial aid to male student-athletes.

250. That discrimination against them, which repeats each day their smaller awards on the basis of a sex-based barrier, will persist until those former members of the women's equestrian team graduate or otherwise leave UC Davis.

## CLASS ALLEGATIONS

251. Plaintiffs bring this action on behalf of themselves and a class and subclass of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3).

252. Specifically, in regard to their claims for equal athletic financial aid:

253. Plaintiffs seek to represent a class for damages under Rule 23(b)(3) of all current and former female students who participated in intercollegiate varsity athletics at UC Davis during the applicable statute of limitations period and did not receive all of the athletic financial aid they could have received under federal law.

254. Plaintiffs who have not yet completed their undergraduate degrees at UC Davis seek to represent a class for injunctive relief under Rule 23(b)(2) of all current and future female students who participate in intercollegiate varsity athletics at UC Davis and do not receive all of

---

[15] *Id.* at column titled "Female Financial Aid Damages."

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

the athletic financial aid they could receive under federal law.

255. Plaintiffs reserve the right to revise or amend the above class and subclass definitions based on facts learned in discovery.

256. ***Numerosity***. The proposed classes meet the "numerosity" requirement of Fed. R. Civ. P. 23(a)(1) because between 296 and 400 female student-athletes participated in varsity athletics at UC Davis annually in and since the 2017-18 academic year. Joinder of them all is impracticable.

257. The proposed classes also meet that requirement because joinder of all class members and all persons harmed by Defendants' past and still-ongoing sex discrimination in UC Davis's varsity intercollegiate athletic program is impracticable.

258. The proposed classes are known to exist, but the number of female student-athletes in some of them will increase during this litigation because of the nature of college enrollment and athletic participation. The number of female student-athletes harmed by Defendants' discrimination will grow as each outgoing class of students graduates and each incoming class of students starts attending UC Davis.

259. The exact number of female varsity student-athletes who have been, are being, and will be harmed by Defendants' conduct, while numerous, is unknown, making joinder impracticable for that reason, too.

260. ***Commonality And Predominance***. The proposed classes satisfy the "commonality" requirement of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3) because there are questions of law and fact in common to the proposed classes that predominate over any questions affecting only individual members, making a class action superior to other available methods for fairly and efficiently adjudicating the controversy. These questions include whether Defendants have violated and are violating Title IX by failing to provide female varsity student-athletes at UC Davis with proportional athletic financial aid, and, if so, what remedies the female varsity student-athletes are entitled to as a result;

261. Because Title IX requires comparison of the sex-segregated men's and women's athletic programs, the Title IX issues in this action are inherently class-based.

262. ***Typicality***. The Plaintiffs proposed as representatives of the classes satisfy the "typicality" requirement of Federal Rule of Civil Procedure 23(a)(3) because their claims are typical of those of the proposed classes. They all have been denied and/or are being denied proportional athletic financial aid at UC Davis because of Defendants' ongoing sex discrimination. Plaintiffs all want to end UC Davis's continuing violation of Title IX and recover appropriate remedies for themselves and the proposed class members.

263. In addition, Plaintiffs, like all members of the proposed classes, have been, are being, or will be harmed by the ongoing sex discrimination in UC Davis's varsity athletics program.

264. ***Adequacy***. The Plaintiffs proposed as class representatives are members of the proposed classes and will fairly and adequately represent the interests of the classes as required by Rule 23(a)(4). They each intend to prosecute this action vigorously to secure fair and adequate monetary and equitable relief, as appropriate, for the classes. There is no conflict between the Plaintiffs proposed as class representatives and the class members.

265. Plaintiffs have retained counsel who have significant experience and success prosecuting Title IX class actions against universities and will adequately represent the classes. Their counsel have devoted substantial time to identifying and investigating the potential claims in this action, have developed knowledge of the facts and the applicable law, have no conflicts with Plaintiffs or the putative classes, and have sufficient resources to commit to representing the putative classes.

266. ***Rule 23(b)(3) Certification: Superiority***. Plaintiffs satisfy the requirement for certification of their claims for damages under Rule 23(b)(3) because class certification would be superior to other available methods for the fair and efficient adjudication of their damages claims. Here, it would be impractical and economically infeasible for the class members to seek redress individually. Proof and resolution of their claims require class-wide evidence and findings. No other litigation concerning this controversy has already begun by other class members and litigation of these claims in this forum is desirable.

267. ***Rule 23(b)(2) Certification: Defendants' Common Conduct***. Plaintiffs satisfy the

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

requirement for certification of their claims for equitable relief under Rule 23(b)(2) in that the Defendants are acting or refusing to act on grounds that apply generally to the class—by denying female student-athletes at UC Davis proportional athletic financial aid — so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

268. Plaintiffs are seeking equitable relief under Rule 23(b)(2) because they have no adequate remedy at law to prevent Defendants from violating Title IX in the future by depriving UC Davis's female varsity student-athletes of equal athletic financial aid.

**COUNT I**

**Title IX**

**Denial of Equal Athletic Financial Aid**

269. Plaintiffs reallege and incorporate each allegation set forth above as if fully set forth herein and further allege as follows.

270. Plaintiffs bring this claim as a class action as set forth under the Class Allegations and on behalf of the classes defined above.

271. UC Davis provides athletic financial aid to some of its male and female varsity student-athletes.

272. Under Title IX and 34 C.F.R. § 106.37, as interpreted by OCR, UC Davis must provide athletic financial aid to its female and male student-athletes in proportion to the number of students of each sex participating in intercollegiate athletics.

273. UC Davis has not provided and does not provide athletic financial aid to its female and male student-athletes in proportion to the number of students of each sex participating in intercollegiate athletics.

274. UC Davis has provided and continues to provide its female varsity student-athletes much less – and its male varsity student-athletes much more – athletic financial aid than they would have received and would receive if UC Davis had granted such aid in proportion to the number of students of each sex participating in intercollegiate athletics.

275. UC Davis's failure to provide its female student-athletes with athletic financial aid in proportion to the number of female student-athletes participating in intercollegiate athletics

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

constitutes sex discrimination in violation of Title IX and 34 C.F.R. § 106.37.

276. Individuals harmed by violations of Title IX may seek and recover monetary damages, injunctive relief to prevent continuing discrimination, declaratory relief, and attorneys' fees and costs.

277. Plaintiffs and the class members have been and are harmed by Defendants' failure to provide UC Davis's female student-athletes with athletic financial aid in proportion to the number of female student-athletes participating in intercollegiate athletics. Such harm includes, but is not limited to, lost opportunities to compete on an equal basis for aid, being forced to endure a sex-based barrier to aid, lost athletic financial aid, and being subjected to sex discrimination, as well as the degrading and stigmatizing effects of that treatment. Accordingly, they are entitled to the relief requesting herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the members of the classes, pray for the following relief:

A. Certify this case as a class action as discussed above;

B. Appoint appropriate Plaintiffs as representatives of the classes, and appoint Plaintiffs' counsel as class counsel;

C. Enter an order declaring that UC Davis has discriminated and is discriminating against its past and current female varsity student-athletes on the basis of their sex in the distribution of athletic financial aid in violation of Title IX and the Regulations promulgated thereunder;

D. Issue a permanent injunction barring UC Davis from discriminating against its female student-athletes on the basis of their sex by depriving them of equal athletic financial aid in violation of Title IX;

E. Award compensatory damages, nominal damages, and other monetary relief as permitted by law to Plaintiffs and all members of the athletic financial aid damages class for UC Davis's violation of their right to equal athletic financial aid;

F. Maintain jurisdiction over this action to monitor UC Davis's compliance with this

Court's order;

G. Award Plaintiffs their reasonable attorneys' fees and expenses; and

H. Order such other and further relief as the Court deems appropriate.

Respectfully submitted,

Dated: September 29, 2026

**KELLER GROVER LLP**

By: ______________________________

ERIC A. GROVER
ROBERT SPENCER
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

Arthur H. Bryant (SBN 208365)
**ARTHUR BRYANT LAW, P.C.**
1999 Harrison Street, 18th Floor
Oakland, California 94612
Telephone: (510)-391-5454
Email: arthur@arthurbryantlaw.com

*Attorneys for Plaintiffs*

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: September 29, 2026

**KELLER GROVER LLP**

By: ______________________________

ERIC A. GROVER
ROBERT W. SPENCER
*Attorneys for Plaintiffs*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

# EXHIBIT A

**UNIVERSITY OF CALIFORNIA - DAVIS - FINANCIAL AID EQUITY ANALYSIS AND COMPUTATION OF ANNUAL SHORTFALLS AND ESTIMATED DAMAGES BASED ON OVERCOMPENSATION OF MALE ATHLETES**

**Based on University of California-Davis Annual Equity in Athletics Disclosure Act Reports**

| Survey Year | Un-duplicated Count Men's Particip. | Un-duplicated Count Women's Particip. | Total M and F athletes Un-duplicated Count | Percent Un-duplicated Count Male Athletes | Percent Un-duplicated Count Female Athletes | Men's Team Athletic Student Aid | Women's Team Athletic Student Aid | Total $ Aid Awarded to Males/ Females | % Actual Aid Awarded to Males | % Actual Aid Awarded to Females | Female Financial Aid Gap as Percent[1] | Female Financial Aid Gap as $ Amt [2] | Female Financial Aid Damages[3] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2017-18 | 274 | 296 | 570 | 48.07% | 51.93% | $4,084,771 | $4,118,439 | $8,203,210 | 49.79% | 50.21% | 1.72% | $141,474 | $294,306 |
| 2018-19 | 260 | 301 | 561 | 46.35% | 53.65% | $3,961,810 | $4,076,726 | $8,038,536 | 49.29% | 50.71% | 2.94% | $236,285 | $509,831 |
| 2019-20 | 274 | 355 | 629 | 43.56% | 56.44% | $4,136,623 | $4,190,552 | $8,327,175 | 49.68% | 50.32% | 6.11% | $509,205 | $1,168,941 |
| 2020-21 | 279 | 337 | 616 | 45.29% | 54.71% | $4,455,125 | $4,417,376 | $8,872,501 | 50.21% | 49.79% | 4.92% | $436,573 | $963,904 |
| 2021-22 | 258 | 367 | 625 | 41.28% | 58.72% | $3,809,197 | $4,513,324 | $8,322,521 | 45.77% | 54.23% | 4.49% | $373,660 | $905,185 |
| 2022-23 | 263 | 377 | 640 | 41.09% | 58.91% | $4,224,796 | $4,650,607 | $8,875,403 | 47.60% | 52.40% | 6.51% | $577,560 | $1,405,469 |
| 2023-24 | 272 | 400 | 672 | 40.48% | 59.52% | $4,516,017 | $5,639,553 | $10,155,570 | 44.47% | 55.53% | 3.99% | $405,429 | $1,001,648 |
| 2024-25 | 288 | 393 | 681 | 42.29% | 57.71% | $4,818,992 | $6,180,518 | $10,999,510 | 43.81% | 56.19% | 1.52% | $167,217 | $395,398 |

[1]"Percent Unduplicated Count Female" minus "Percent Actually Awarded" which expresses the dollar shortfall experienced by females as a percent of total athletic student aid compared to what female athletes should have received. The percentage females should have received should have been equal to the percentage UNDuplicated count female athletes. Note: a variance of one percent is permitted.

[2]"Percent UNDuplicated Count Female" times Total $ Aid Awarded to Male/Female Athletes" minus "Women's Team Athletic Student Aid" expresses the answer to "If women did not receive the financial aid equal to their UNDuplicated count percentage, how much were they shortchanged in dollars?

[3]"Men's Team Athletic Student Aid" divided by "Percent Unduplicated Count Male Athletes" minus "Total $ Awarded to Males/Females." The first phrase of the equation yields the total amount of financial aid that should have been awarded if the amount awarded to males was equal to their UNDuplicated participation count percent. Then the second phrase subtracts the total amount of financial aid in dollars that was actually awarded to males and females. The resulting amount is the number of dollars female athletes should have received if, added to what they actually received, the total amount would equal their UNDuplicated count percentage . This is the amount male athletes were overpaid which cannot be practically be clawed back. Therefore, women should be entitled to recover this amount since men were improperly overcompensated.

# EXHIBIT B

COLLEGIATE CONSULTING
Celebrating 20 Years
2005 – 2025

# University of California, Davis

Sports Sponsorship Study

# UNIVERSITY OF CALIFORNIA, DAVIS – TITLE IX

Collegiate Consulting has completed a current and projected Title IX analysis of UC Davis Athletics. The Title IX analysis comprises a comparison of men and women athletes based on the number of student-athletes, operating budgets and Student-Athlete Financial Aid.

Of its undergraduate population, UC Davis currently has 12,977 males and 18,820 females. This is a 41% male, 59% female ratio. The student-athlete (unduplicated) count is 273 men and 385 women; bringing athletics completely in alignment with the UG population.

A review of the operating budgets, the men's sports operating budgets are $5.38 million (51%) while the women's are $5.1 million (49%). The average operating budget expenditure per SA is $19,706 for the men and $13,247 for the women.

The last point of comparison is SA financial aid. Men's sports financial aid totals $4.51 million (44%), and women's sports financial aid totals $5.63 million (56%). The difference between the student-athlete ratios and the SA financial aid ratios is a three percent differential. However, male SA's average $16,542 in athletic financial aid compared to $14,648 for the 385 female student-athletes.

| Participation - Student-Athletes | | | | | |
|---|---|---|---|---|---|
| Demographic | Undergraduate | | Student-Athletes (Unduplicated) | | Variance |
| | Number | Percentage | Number | Percentage | |
| Men | 12,977 | 41% | 273 | 41% | 1% |
| Women | 18,820 | 59% | 385 | 59% | -1% |
| **Participation - Operating Budgets** | | | | | |
| Demographic | SA Participation | | Operating Budgets | | Ops Budget p SA |
| | Number | Percentage | Number | Percentage | |
| Men | 273 | 41% | $ 5,379,807 | 51% | $ 19,706 |
| Women | 385 | 59% | $ 5,100,006 | 49% | $ 13,247 |
| **Participation - SA Financial Aid** | | | | | |
| Demographic | SA Participation | | SA Financial Aid | | Financial Aid p SA |
| | Number | Percentage | SA Financial Aid | Percentage | |
| Men | 273 | 41% | $ 4,516,017 | 44% | $ 16,542 |
| Women | 385 | 59% | $ 5,639,553 | 56% | $ 14,648 |


This document contains proprietary and confidential information. No part of this document may be reproduced or disclosed. to a third party without written consent from Collegiate Consulting.

Collegiate Consulting projected updated comparisons with the addition of stunt as a varsity sport. The total student-athlete number would slightly increase the female percentage to 61% and a two percent differential from the total UG population. There is no change to the operating budget percentages and the average operating budgets for female student-athletes has a slight decrease to $12,070 per student-athlete. Adding stunt would incrementally decrease the average athletic FA per female student-athlete to $13,370 and narrowing the differential to $1,278.

| Participation - Student-Athletes | | | | | |
|---|---|---|---|---|---|
| Demographic | Undergraduate | | Student-Athletes (Unduplicated) | | Variance |
| | Number | Percentage | Number | Percentage | |
| Men | 12,977 | 41% | 273 | 39% | -2% |
| Women | 18,820 | 59% | 435 | 61% | 2% |
| **Participation - Operating Budgets** | | | | | |
| Demographic | SA Participation | | Operating Budgets | | Ops Budget p SA |
| | Number | Percentage | Number | Percentage | |
| Men | 273 | 39% | $ 5,379,807 | 51% | $ 19,706 |
| Women | 435 | 61% | $ 5,250,569 | 49% | $ 12,070 |
| **Participation - SA Financial Aid** | | | | | |
| Demographic | SA Participation | | SA Financial Aid | | Financial Aid p SA |
| | Number | Percentage | SA Financial Aid | Percentage | |
| Men | 273 | 39% | $ 4,516,017 | 44% | $ 16,542 |
| Women | 435 | 61% | $ 5,815,893 | 56% | $ 13,370 |


This document contains proprietary and confidential information. No part of this document may be reproduced or disclosed.
to a third party without written consent from Collegiate Consulting.